# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Sep 12 2018, 5:25 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Daniel K. Burke
DKB Legal LLC
Carmel, Indiana

ATTORNEY FOR APPELLEE

Fred Pfenninger
Pfenninger & Associates
Indianapolis, Indiana

IN THE
# COURT OF APPEALS OF INDIANA

Sail 22, LLC,

*Appellant-Defendant,*

v.

Outdoor Business Network,

*Appellee-Plaintiff.*

September 12, 2018

Court of Appeals Case No.
49A02-1707-CC-1627

Appeal from the Marion Superior Court

The Honorable John Hanley, Judge

Trial Court Cause No.
49D11-1603-CC-7557

**Robb, Judge.**

# Case Summary and Issue

[1] Sail 22, LLC ("Sail 22") entered into a contract with Outdoor Business Network, Inc. ("OBN") for OBN to design a website for its business. Approximately one year later, OBN filed a complaint against Sail 22 alleging Sail 22 had failed to pay OBN for its services. Sail 22 answered and filed a counterclaim alleging OBN had breached the contract. The parties filed cross motions for summary judgment and the trial court denied them both. The court held a bench trial and entered judgment for OBN. Sail 22 now appeals, contending the trial court erred in denying its motion for summary judgment as to OBN's claim and also in denying its motion for summary judgment as to its counterclaim. Concluding genuine issues of material fact remained, we affirm.

# Facts and Procedural History

[2] In March of 2015,[1] Sail 22 and OBN entered into a Website Design and Development Contract for OBN to "create designs for the look-and-feel, layout and functionality" of Sail 22's website. Appendix of Appellant, Volume 2 at 34. Pursuant to the terms of the Contract, Sail 22 hired OBN to "design and develop a web site on an hourly basis at the rates stated in the attached price list (Schedule A), plus any related expenses . . . ." *Id.* Schedule A shows hourly

---

[1] The complaint and answer state the Website Design and Development Contract was signed on February 17, 2015. Later pleadings and documents filed with the court refer to this date as March 17, 2015. Based on our review of the clearest copy of the Website Design and Development Contract in the record, we believe the correct date to be March 17, 2015. *See* Appendix of Appellant, Volume 2 at 36.

prices ranging from $75 per hour for a Level 1 Graphic Designer or Non-Principal Consultant to $400 for the services of a Principal Consultant. *Id.* at 37. With regard to payment, the contract states: "you agree to stick tight to the following payment schedule, which will be as follows, but may be revised based on further conversations between us." *Id.* at 36. The day before the contract was signed, OBN's president, Curtis Jazwiecki, sent an email to Ed Furry, a member of Sail 22, stating, "Initially we will do all of our work on an hourly basis, at our lowest rate of $75/hr. Up to 20 hours or $1500 dollars. Anything exceeding that amount will require your approval in writing via email." *Id.* at 38; *see also id.* at 32 (Affidavit of Ed Furry stating the e-mail was dated March 16, 2015[2]). The email included an attachment titled "OBN Developmnet [sic] Contract Hourly.pdf." *Id.* at 39.

[3] The first invoice OBN sent Sail 22 in May 2015 was in the amount of $3,093.75. *Id.* at 40. Sail 22 had not provided authorization, written or otherwise, for work in excess of $1,500. *Id.* at 32. In the interest of completing the project, however, Sail 22 paid the invoice and OBN continued working on the website, issuing to Sail 22 from August to October 12, 2015, five additional invoices totaling $1,728.73. *Id.* at 32-33, 42-49. Invoice #20773, dated August 20, 2015, had the following note:

> Note on agreed rates: Original agreement states: "initially we will do all of our work on an hourly basis, at our lowest rate of

---

[2] The email itself does not include any date information.

$75/hr. Up to 20 hours or $1500 dollars." We have currently performed over 54 hours of work, well exceeding the original 20 hours at the lower rate. Further work will be billed according to the rates outlined in Schedule A, with a discounted rate for hourly principal from 400/hr to 250/hr (friends/industry rate).

*Id.* at 45. Sail 22 claims the additional amounts reflected in those invoices were also unauthorized.

[4] On October 12, 2015, Jazwiecki, on behalf of OBN, emailed Furry, notifying him that Sail 22 had past due invoices and asking to be paid promptly. Furry replied,

> The budget was $1500 for a functional website from the beginning and you have acknowledged that. So much was done beyond that budget before any invoicing was ever received and we paid that invoice expecting our website to be completed based on that total which was more than double the agreed on amount. Although a verbal agreement for our budget, this was discussed and it was our budget.

*Id.* at 52. Jazwiecki responded that "a gracious discount" had been applied to invoiced amounts, but

> [i]f you would like[, I] can spend a few hours . . . to re-audit your account and ensure that every minute is properly billed according to the rates on schedule A of our contract[.] I believe that would not be beneficial to you though, as our actual hours greatly exceed what you have been invoiced for . . . .

*Id.* at 50. Thereafter, on October 14, OBN sent Sail 22 an invoice reflecting a charge of $60 for "Hourly Consulting - Project Management (100/hr) – Phone

conference . . . discussing [Sail 22's] issues with billing, research of previous emails with Sail22 regarding approval over budget overage . . . ." *Id.* at 49. Finally, also on October 14, OBN sent Sail 22 a new invoice amending all existing invoices by removing the previously applied discount and retroactively applying the Schedule A rate to each invoice and adding charges of $5,600 for 14 hours of reading and responding to fifty-six e-mails, $1,218.75 for 16.25 hours of reading and responding to sixty-five support tickets, and $43.33 for 26 minutes of phone calls.[3] This new invoice totaled $10,949.58. Sail 22 did not pay this or any other amount.

[5]   On March 1, 2016, OBN filed a Complaint on Contract, alleging Sail 22 had failed to make payments to OBN as required by the parties' contract and owed OBN not less than $14,015.68 plus interest. Sail 22 answered the complaint and asserted a counterclaim against OBN, alleging, in part, that OBN had breached the parties' agreement by charging and collecting amounts in excess of the agreed maximum price and charging for activities that were not authorized by Sail 22.

[6]   OBN filed a motion for summary judgment in its favor on its complaint based upon an affidavit of debt. Sail 22 responded to the motion and filed a cross motion for summary judgment, seeking summary judgment on its behalf on

_____

[3] For instance, Invoice #20769 issued on September 3, 2015, billed for "Hourly Consulting – Response to support ticket – 0.2 Hours @ 75.00/Hour (Performed by Principal, Discounted -325.00/hr)." *Id.* at 43. The amended invoice showed "Invoice 20769 – Billing Adjustment – Contracted Rate 400/hr – No Discount Applies per Contract, Discount removed – Add 65.00 for .02 Hours[.]" *Id.* at 55.

both OBN's complaint and its own counterclaim. Both parties' motions for summary judgment were denied. The court held a bench trial on February 21, 2017, after which it entered an order in favor of OBN for $8,500.00 plus costs. Sail 22 now appeals.

# Discussion and Decision

## I. Summary Judgment Standard of Review

[7] When reviewing the grant or denial of summary judgment, we apply the same test as the trial court: summary judgment is appropriate only if the designated evidence shows there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Ind. Trial Rule 56(C); *Sedam v. 2JR Pizza Enterps., LLC*, 84 N.E.3d 1174, 1176 (Ind. 2017). Our review is limited to those facts designated to the trial court, T.R. 56(H), and we construe all facts and reasonable inferences drawn from those facts in favor of the non-moving party, *Meredith v. Pence*, 984 N.E.2d 1213, 1218 (Ind. 2013). On appeal, the non-moving party carries the burden of persuading us the grant of summary judgment was erroneous. *Hughley v. State*, 15 N.E.3d 1000, 1003 (Ind. 2014). A grant of summary judgment will be affirmed if it is sustainable upon any theory supported by the designated evidence. *Miller v. Danz*, 36 N.E.3d 455, 456 (Ind. 2015).

[8] In addition, the "[f]act that the parties [made] cross-motions for summary judgment does not alter our standard of review. Instead, we must consider each motion separately to determine whether the moving party is entitled to

judgment as a matter of law." *Doe v. Donahue*, 829 N.E.2d 99, 106 (Ind. Ct. App. 2005) (citation omitted), *trans. denied, cert. denied*, 547 U.S. 1162 (2006).

[9] And finally, we note that although this case proceeded to trial, and the trial court entered final judgment for OBN, we may still review the trial court's ruling on the motions for summary judgment. *See N. Ind. Pub. Serv. Co. v. Dabagia*, 721 N.E.2d 294, 298 (Ind. Ct. App. 1999), *trans. denied*.[4]

## II. Summary Judgment

[10] Sail 22 contends the trial court erred in denying summary judgment to Sail 22 on OBN's breach of contract claim and on its own counterclaim for breach of contract. To prevail on a claim for breach of contract, the plaintiff must show the existence of a contract, breach of the contract by the defendant, and damages resulting from the breach. *McCullough v. Noblesville Schs.*, 63 N.E.3d 334, 343 (Ind. Ct. App. 2016), *trans. denied*. OBN's complaint alleged Sail 22 breached the Website Design and Development Contract by failing to pay amounts due under that document. Sail 22's counterclaim alleged OBN breached the parties' contract by charging unauthorized amounts above the limit agreed by the parties outside the Website Design and Development

---

[4] Although a party *can* appeal a summary judgment ruling after a final judgment, we are perplexed as to why Sail 22 is appealing the summary judgment rulings and not the final judgment, which also went against Sail 22. We are not privy to the proceedings after the denial of summary judgment and do not know on what basis the trial court entered final judgment for OBN, but the arguments Sail 22 made on summary judgment would have been equally in play during the trial. The result Sail 22 seeks – that it not be required to pay OBN money – could have also been achieved by appealing the trial court's resolution of the questions of fact at the bench trial and the trial court's order that it pay OBN $8,500.

Contract.[5]  In support of its motion for summary judgment on its complaint, OBN designated the Website Design and Development Contract, a statement of account, and an affidavit of debt.  In response to OBN's motion and in support of its own motion for summary judgment on its counterclaim, Sail 22 designated the affidavit of Furry, e-mails between OBN and Sail 22, invoices from OBN, and a confirmation of Sail 22's payment of the initial invoice.

[11]    The first element in the breach of contract claim for either party is to show the existence of a contract.  Although the parties agree they have a contract, they disagree about the terms of the contract.  Our goal in contract interpretation is to "determine the intent of the parties at the time that they made the agreement." *Citimortgage, Inc. v. Barbaras*, 975 N.E.2d 805, 813 (Ind. 2012). Generally, where parties have reduced an agreement to writing and the writing embodies the final and complete agreement between the parties, the parol evidence rule prohibits courts from considering extrinsic evidence for the purpose of varying or adding to the terms of the written contract.  *I.C.C. Protective Coatings, Inc. v. A.E. Staley Mfg. Co.*, 695 N.E.2d 1030, 1035 (Ind. Ct. App. 1998), *trans. denied*.  "'Extrinsic evidence' is evidence relating to a contract but not appearing on the face of the contract because it comes from other sources, such as statements between the parties or the circumstances

---

[5] We reiterate that despite arguing OBN's initial invoice was above the agreed limit, Sail 22 paid this invoice and there is no designated evidence indicating Sail 22 communicated with OBN to express displeasure with the amount of this invoice or to halt future work.

surrounding the agreement." *Celadon Trucking Servs., Inc. v. Wilmoth*, 70 N.E.3d 833, 839 (Ind. Ct. App. 2017), *trans. denied*.

[12] An integration clause included within the writing expresses the parties' intention that all prior negotiations, representations, and previous communications are either withdrawn, annulled, or merged into the final written agreement. *Lawlis v. Kightlinger & Gray,* 562 N.E.2d 435, 439 n.1 (Ind. Ct. App. 1990), *trans. denied*. However, the existence of an integration clause does not control the question of whether a writing was intended to be a completely integrated agreement, *I.C.C. Protective Coatings, Inc.*, 695 N.E.2d at 1035, it is merely "some evidence" of the parties' intent, *Franklin v. White*, 493 N.E.2d 161, 166 (Ind. 1986). Rather, the preliminary determination of whether the parties intended a writing to be totally integrated is a question of fact that must be based on all the relevant evidence. *Hinkel v. Sataria Distribution & Packaging, Inc.*, 920 N.E.2d 766, 769 (Ind. Ct. App. 2010).

[13] In determining whether OBN and Sail 22 intended the Website Design and Development Contract to embody their entire agreement, the relevant evidence includes:

- The document itself, which does not contain an integration clause and includes language referring to revising the payment schedule based on further conversations;
- The e-mail between OBN and Sail 22, to which the Website Design and Development Contract was attached, and which referred to a different

pricing structure than reflected in Schedule A to the Website Design and Development Contract and included a cost limitation;

- Invoices #20768, #20769, and #20773 which show amounts billed at the discounted rate discussed in the e-mail rather than the amounts reflected in Schedule A;

- Invoice #20773 which includes a "[n]ote on agreed rates," quotes from the e-mail regarding the initial billing discount referring to such as the "[o]riginal agreement," and notes that further work will be billed as per Schedule A to the Website Design and Development Contract, with a continued discounted rate for hourly work by a Principal, App. of Appellant, Vol. 2 at 45; and

- Invoice #20948 which adjusts the billing for all prior invoices by removing the discount.

[14]  "[C]onstruction of an unambiguous written contract is generally a question of law for the court, making summary judgment particularly appropriate in contract disputes." *Bicknell Minerals, Inc. v. Tilly*, 570 N.E.2d 1307, 1310 (Ind. Ct. App. 1991). If a contract is ambiguous or uncertain and its meaning must be determined by extrinsic evidence, however, its construction is a matter for the factfinder. *Id.* OBN's and Sail 22's designated evidence created a genuine issue of material fact as to what the parties intended their contract to be at the time they entered into it. Construction of the contract was therefore a matter to be left to the factfinder and the trial court did not err in denying summary judgment to Sail 22 on OBN's complaint or on its own counterclaim.

# Conclusion

The trial court did not err in denying summary judgment to Sail 22 because genuine issues of material fact precluded judgment for Sail 22 as a matter of law.

Affirmed.

Najam, J., and Altice, J., concur.